[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR MODIFICATION NO. 138 PLAINTIFF'S MOTION TO MODIFY ALIMONY AND CHILD SUPPORT NO. 139 PLAINTIFF'S MOTION FOR ATTORNEY'S FEES TO DEFEND MOTION FOR MODIFICATION NO. 140 PLAINTIFF'S MOTION FOR CONTEMPT NO. 141
This 22 year marriage which produced four children, three of whom were minors, was dissolved on June 12, 1989. The defendant husband was ordered, inter alia, to pay the plaintiff wife $6,000.00 monthly alimony until her death, remarriage or cohabitation or October 31, 2,007, whichever shall first occur. The defendant was also ordered to pay as child support the sum of $750.00 per month per child. The judgment further provided that in addition, beginning January 1, 1991, in the event the defendant's annual income exceeds $335,000.00 per year he shall pay 20 per cent of his annual income in excess of $335,000.00 to the plaintiff as additional alimony. In the event the defendant's net income shall fall below $250,000.00 per year, the defendant shall be entitled to seek a change in the financial orders.
By motion dated December 3, 1990, the defendant moved for modification of alimony and support claiming that he "has suffered a material and substantial change in his financial circumstances as well as having his net income fall below $250,000.00 per year." The motion for modification was denied by memorandum of decision dated May 21, 1991. An appeal was taken but later abandoned by the defendant.
By motion dated February 13, 1992, the defendant has again alleged "a substantial change of circumstances concerning his financial condition warranting a modification of the current alimony and support amounts."
The defendant has been employed since 1989 by Greenwich Capital Markets, Inc. and together with his associate, Robert Suness, exclusively trades an arbitrage bond account for The Long-Term Credit Bank of Japan. He receives $100,000.00 annually in salary monthly draw payments plus a year end bonus of 20 per cent of the profits the account has made in excess of the expenses of maintaining the account. The defendant had been employed by Solomon Brothers during the previous 19 years in similar and related brokerage activities. He was compensated in the same manner with Solomon Brothers and received an annual draw payable monthly with a year end bonus.
In 1989, the year of the dissolution, the defendant received a total gross income of $532,000.00 and had a net income of $318,000.00. His 1990 gross income was $800,000.00 with a net income of $497,000.00. His 1991 gross income was $196,000.00 and his net income was not made available to the court in that at the time of the hearing he had not filed his CT Page 7727 1991 income tax return. In 1992, the defendant will earn the same $100,000.00 draw plus a bonus if and to the extent it is earned.
The hearing testimony revealed that if the year ended on the day of the court hearing and based upon the existing figures as available at that time, that the defendant's 1992 bonus would be approximately $350,000.00. Of course, the court is well aware that the existing $4,000,000.00 plus profit which the defendant's account then reflected could be in red ink at year's end. However, the account could also have a profit in excess of $4,000,000.00 and a bonus for the defendant in excess of $350,000.00.
Both of the parties to this action have enviable financial affidavits and a high standard of living. Defendant's testimony, his counsel and brief all indicate that the defendant primarily seeks a modification in the method of payment rather than in the amount of payment. He is not attempting to reduce the total amount of payments as much as to defer same. He would prefer to pay his alimony and child support obligation out of income when he receives it with a substantial payment to be made at the end of the year when he receives his year end bonus. The defendant has been in this uncertain at best line of business activity for over 20 years. He has always received a monthly draw and a year end bonus if his performance justified it.
The plaintiff wife's most recent financial affidavit of June 11, 1992, reflects no monthly income other than that received from the defendant. She lists monthly expenses of $7,237.00. The defendant's most recent financial affidavit and the evidence do not reflect a "hemorrhaging of his assets." His April 11, 1991 financial affidavit lists $1,264,000 in assets and his June 11, 1992 financial affidavit reflects $964,100 in assets. However, he recently purchased a new residence for $665,000 primarily with his own funds. His June 11, 1992 financial affidavit credits him with only a one-half or $332,500 interest in this property. If the remaining one-half interest of $332,500 which he now credits to his present wife is added to his listed assets of $964,100, the husband's present assets would be $1,296,600 or $32,600 in excess of the amount listed on his financial affidavit of April 11, 1991.
The wife claims that the husband had $304,000.00 of net income after the payment of taxes, alimony and support obligations on average for each of the years 1989, 1990 and 1991. This analysis may be somewhat on the optimistic side as defendant's 1991 tax return is not yet available. She further maintains "that his current monthly draw of $100,000.00 is CT Page 7728 exactly the same as it was at the time of the dissolution and the prior modification motion. In fact, he has always received the bulk of his income by way of bonus at the end of each year."
The plaintiff can not meet her expenses with $2600.00 monthly payments from the husband. Further, the husband is better able to mortgage his new residence than his former wife who has no earned income. It is the defendant husband who must make the adjustment to save in his good years so that he may as his brief states "stanch the hemorrhaging of his assets" in the can years.
The mere fact the Dissolution Memorandum states that "in the event the defendant's net income shall fall below $250,000.00 per year, the defendant shall be entitled to seek a change in the financial orders," is not construed as a mandatory granting of same upon the occurrence of one isolated tumble below the $250,000.00 level. Of course, it is axiomatic that if defendant's net income falls below $250,000.00 on a more regular basis that a modification might well be warranted.
The court has considered all of the testimony, the past and current financial affidavits as on file, all of the factors of Section 46b-82 and Section 46b-84 of the Connecticut General Statutes and the case law which speak to same in its determination of this matter. Connecticut General Statutes Section 46b-86(a) requires the proponent of the motion to show a substantial change in the circumstances of either party. The moving party must show that continued operation of the original order would be unfair or improper. The defendant has not sustained his burden and the motion for modification is denied.
The court finds that the defendant is in arrears in an amount equal to the difference between what he has been paying and what he should have paid in accordance with the original judgment. The defendant is in contempt of existing court orders and is ordered to pay said amount forthwith.
Plaintiff's motion for attorney's fees to defend Motion For Modification and for Contempt Motion is granted. The defendant is ordered to pay $2,500.00 on account of plaintiff's attorney's fees together with disbursements in the amount of $716.85, all as more fully set forth in plaintiff's affidavit re attorney's fees and disbursements dated June 10, 1992, within 90 days of the date hereof.
The court makes no order concerning plaintiff's motion to modify alimony and child support in that said motion was not argued. CT Page 7729
BALLEN, JUDGE.